IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT R. BENNIE, JR., individually, and on behalf of BOB BENNIE WEALTH MANAGEMENT, INC.,<br><br>              Plaintiff,<br><br>       vs.<br><br>JOHN MUNN, in his official and individual capacity, JACK E. HERSTEIN, in his official and individual capacity, RODNEY R. GRIESS, in his official and individual capacity, and JACKIE L. WALTER, in her official and individual capacity.,<br><br>              Defendants. | CASE NO.  4:11CV3089<br><br><br><br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |

## INTRODUCTION

After Defendants moved to dismiss Plaintiff's original complaint (Filing No. 23) Plaintiff Robert Bennie ("Bennie"), individually and on behalf of Bob Bennie Wealth Management, Inc. ("BBWM"), filed an amended complaint.  The Amended Complaint asserts Section 1983 claims against four officials of the Nebraska Department of Banking and Finance (the "Department"), John Munn ("Munn"), Jack E. Herstein ("Herstein"), Rodney R. Griess ("Griess"), and Jackie L. Walter ("Walter") (collectively "Defendants"), in their official and individual capacities.  Bennie alleges Defendants: (1) violated his procedural due process rights by issuing orders without providing him an opportunity for a hearing, (2) singled him out for differential treatment because of his political

speech in violation of equal protection, and (3) violated his free speech rights by retaliating against him.  In the alternative, Bennie seeks a declaration that Neb. Rev. Stat. § 8-1103(4), is unconstitutional as applied to him.

First, Bennie's claims against Herstein and Walter should be dismissed in their entirety because Bennie failed to allege facts that would establish that they were personally involved in depriving Bennie of a constitutional right.  Second, all of Plaintiff's claims should be dismissed because they have not alleged that Defendants deprived them of a constitutionally protected property or liberty interest which is a conditional precedent to a Section 1983 claim.  Third, Nebraska law provided Plaintiff with at least two procedures by which they could have requested a hearing.  Plaintiff's failure to avail themselves of those procedures is fatal to their due process claims (Claims I and IV).  Fourth, Bennie's claims on behalf of BBWM should be dismissed because there are no allegations that Defendants took any actions against BBWM or that BBWM was harmed.  In any event, Bennie cannot assert the constitutional rights of BBWM.  Finally, Plaintiff's claims against Walter, Herstein, and Griess relating to the orders should be dismissed because they did not issue the orders, and cannot be liable for them.

**STANDARD OF REVIEW**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft

2

v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2006).   A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.   Id., at 556.   Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.

Iqbal, 129 S. Ct. at 1949.   A claim for relief under Rule 12(b)(6) now "requires more than

labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

Twombly, 550 U.S. at 555; Iqbal, 129 S.Ct. at 1950.

## ARGUMENT

I.   **BENNIE'S SECTION 1983 CLAIMS SHOULD BE DISMISSED AGAINST HERSTEIN AND WALTER IN THEIR ENTIRETY, AND AGAINST MUNN AND GRIESS IN PART, BECAUSE HE HAS NOT ALLEGED SPECIFIC FACTS SHOWING WHAT EACH DEFENDANT ALLEGEDLY DID WHICH ALLEGEDLY VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS.**

Bennie asserts three claims under Section 1983.   Bennie's First Claim alleges that

Defendants deprived Bennie of procedural due process by failing to provide him with

hearing.   (Am. Compl. ¶¶ 126-139).   Bennie's Second Claim alleges that Defendants

singled Bennie out for differential treatment because of Bennie's political speech and

political views in violation of the Equal Protection Clause. (Am. Compl. ¶¶ 140-147).

Bennie's Third Claim alleges the Defendants retaliated against him because he exercised

his First Amendment rights.   (Am. Compl. ¶¶ 148-156).

In order to state a claim under Section 1983, a plaintiff must allege facts supporting each individual defendant's personal involvement in or responsibility for constitutional violations.  Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir.1999); see also Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) (quoting Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006)) ("'Liability under [§] 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability...[the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.'") (internal citation omitted).

In Section 1983 cases it is "particularly important" that the complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."  Robbins v. Oklahoma, 519 F.3d 1242, 1249-50 (10th Cir. 2008) citing Twombly, 127 S.Ct. at 1970-71 n. 10.  Alleging generally that "defendants" collectively acted without identifying which acts are attributable to whom makes it "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."  Robbins, 519 F.3d at 1250.

Because Defendants could only be liable under Section 1983 for their own actions taken in their individual capacities, it is important to examine Bennie's allegations against each Defendant separately.  While Defendants dispute many of the allegations in Bennie's Amended Complaint, for purposes of this motion, the Court must assume

4

that all factual allegations in the Amended Complaint are true.  See <u>Levy v. Ohl</u>, 477 F.3d 988, 991 (8th Cir.2007).  However, the Court is not bound by legal conclusions couched as factual allegations.  <u>Katz v. Sunset Fin. Services, Inc.</u>, 650 F. Supp. 2d 962, 963 (D. Neb. 2009) (Smith-Camp, J.).

Accepting Bennie's factual allegations as true, none of Bennie's claims state a claim against Herstein and Walter.  In addition, Bennie's claims unrelated to the Orders should be dismissed against Munn and all claims relating to the Orders be dismissed against Griess.

### A.   <u>Plaintiff's Allegations Against Herstein Do Not State a Section 1983 Claim.</u>

#### 1.   Bennie's Allegations Against Herstein

Bennie alleges Herstein is the Assistant Director of the Bureau of Securities who has the authority to apply the Department's regulations and train and supervise officers and securities examiners and that he was acting under color of state law.  (Am. Compl. ¶ 8).  Bennie alleges that , on December 17, 2009, in response to an internal e-mail from a colleague at the Department, Herstein, replied "Bob [Bennie] is always seen wearing a cowboy hat lately, so I say 'Hang Him High'." (Am. Compl. ¶ 39).  In conversations internal to the Department, Herstein proposed a $25,000 fine per violation against Bennie.  (Am. Compl. ¶ 49).  Bennie alleges Herstein proposed fining Bennie before an investigation occurred and without a legitimate basis.  (Am. Compl. ¶ 50).  Bennie does not allege the Department ever fined him.

5

Bennie also alleges that sometime after February 8, 2010, Griess forwarded documents he received from LPL to Herstein.  (Am. Compl. ¶ 70).  On Feburary 18, 2010, Herstein complimented Griess on a draft of an e-mail Griess prepared.  (Am. Compl. ¶¶ 79, 82).  On February 25, 2010, Herstein was informed that Bennie had informed the Governor that Bennie believed the Department's investigation was politically motivated.  (Am. Compl. ¶ 83).  On March 9, 2010, Griess forwarded an e-mail to Herstein.  (Am. Compl. ¶ 90).  On March 10, 2010, Mr. Herstein replied to Mr. Griess in an e-mail stating, "Was this the new 'expert reviewer'? My response to their response would be 'that's it.'  We should keep this in a reserve file and move on and hopefully he [Mr. Bennie] will eventually hang himself along with LPL." (Am. Compl. ¶ 91).  On March 10, 2010, Herstein instructed Griess to "do nothing with Bennie and only keep this latest in a reserve file only." (Am. Compl. ¶ 92).

On December 3, 2010, Bennie's new broker-dealer, Prospera, wrote a letter to Herstein regarding an audit conducted by Bennie.  (Am. Compl. ¶ 99).  On December 7, 2010, Griess informed Herstein that Prospera had contacted him regarding Bennie's registration.  (Am. Compl. ¶ 100).  Herstein informed Griess "I don't see why this would be treated any different than any other applicant applying for a license." (Am. Compl. ¶ 101).  On the same day Griess wrote an e-mail to Herstein indicating that the Department had received a disclosure summary and "plea for assistance/expedition dated December 3, 2010" from Prospera.  (Am. Compl. ¶ 102).  Sheila Cahill (the

Department's legal counsel) wrote to Herstein stating: "I agree that we don't get intimidated.  I think that any higher up who starts to push will back off once we mention the reason that LPL gave for terminating Bennie.  As long as we are not dragging our feet on requesting information, we should be fine." (Am. Compl. ¶ 103).

Sometime after December 17, 2010, Bennie complained to Herstein about the order issued by the Department.  (Am. Compl. ¶ 113).  After Bennie began working for Prospera, a regulated entity, Herstein required Prospera to transmit all of Bennie's account balances to the Department on a weekly basis. (Am. Complaint ¶ 120).  Herstein did not sign the Orders which Plaintiff claims is one basis of liability.  (Am. Complaint Exs. A&B).

**2.    Bennie's Allegations Against Herstein Fail to State A Claim.**

Assuming all of the above allegations are true, Herstein did nothing to violate Bennie's constitutional rights.  While Bennie alleges that in December 2009 Herstein discussed with other members of the Department that Bennie should be fined, no fine was ever issued.  Bennie's constitutional rights were not violated by Herstein discussing the possibility of fining Bennie, when no fine was actually issued.  Similarly, engaging in internal discussions with other members of the Department commenting on a draft of an e-mail communication is also not grounds for liability.

As of March 10, 2010, Herstein recommended that the Department take no action against Bennie.  (Am. Compl. ¶ 92).  Clearly, Herstein cannot have violated Bennie's

constitutional rights when there is no allegation that Herstein took any action against Bennie, and, in fact, recommended that no action be taken.

The only action Bennie alleges Herstein took was that, at some point after Bennie began working for Prospera, Herstein required Prospera to transmit all of Mr. Bennie's account balances to the Department on a weekly basis. (Am. Complaint ¶¶ 119-120). Prospera was an entity regulated by the Department (Am. Coml. ¶ 119).  Bennie does not allege that he was harmed because Prospera had to comply with a regulatory request initiated by Herstein.  All claims against Herstein should be dismissed.

### B.   Plaintiff's Allegations Against Walter Do Not State a Section 1983 Claim.

### 1.   Bennie's Allegations Against Walter

Bennie alleges Walter is a securities examiner with the Department, conducts examinations, and was acting under color of state law.  (Am. Compl. ¶ 10).  On January 15, 2010, Griess sent an e-mail to Walter regarding his intent to fine Bennie.  (Am. Compl. ¶ 51).  No fine was ever issued.

On December 7, 2010, Griess wrote an e-mail to Walter indicating that the Department had received a disclosure summary and "plea for assistance/expedition dated December 3, 2010" from Prospera.  (Am. Compl. ¶ 102).  On the same day, Sheila Cahill (the Department's legal counsel) wrote to Herstein stating, "I agree that we don't get intimidated. I think that any higher up who starts to push will back off once we

mention the reason that LPL gave for terminating Bennie.  As long as we are not dragging our feet on requesting information, we should be fine." (Am. Compl. ¶ 103).

Bennie alleges that at some point Walter wrote e-mails to Mr. Bennie's broker-dealer, Prospera, a regulated entity, requiring Prospera to respond to questions and inquiries. (Am. Compl. ¶ 119).  Bennie alleges "Mrs. Walker [sic] demanded that Prospera provide her detailed documentation proving Bennie had not opened any new accounts since the December Order…" (Am. Compl. ¶ 121).

Walter did not sign the Orders which Bennie claims is one basis of liability.  (Am. Complaint Exs. A&B).

## 2.   Bennie's Allegations Against Walter Fail to State A Claim.

There are two primary categories of allegations against Walter.  First, Bennie alleges Walter received e-mails from third parties within the Department.  Receiving an e-mail is not grounds for liability under Section 1983.

Second, Walter sent inquiries and questions to Prospera, a regulated entity, regarding Bennie.  While Bennie characterizes these e-mails as "harassment," he has not attached the e-mails or described their content.  Bennie's characterization of the e-mails as "harassment" is a legal conclusion which this Court does not have to accept as true.  See Katz, supra.  In addition, Bennie does not allege that he was harmed because Prospera had to comply with a regulatory request initiated by Walter.  There is no allegation Prospera took any action against Bennie as a result of Walter's regulatory

inquiries.  The legal conclusion that Walter, a regulator, sent harassing inquiries and questions to Prospera, a regulated entity, is insufficient to state a Section 1983 claim against Walter.

Walter also did not sign the Orders which Bennie claims is one basis of liability. (Am. Complaint Exs. A&B).  All claims against Walter should be dismissed.

**C.** **Bennie's Allegations Against Munn Relating to the Investigation of the Invitations Do Not State a Section 1983 Claim.**

     **1.** **Bennie's Allegations Against Munn.**

Bennie alleges that Munn is the Director of the Department of Banking and Finance, whose duties include the regulation of the securities industry, training and supervision of officials in the Department, and who has authority to issue orders.  (Am. Compl. ¶ 7).  In February 2010, Munn received through the mail a copy of a dinner invitation from Bennie related to Bennie's investment business and Munn forwarded it on to Griess for review.  (Am. Compl. ¶¶ 74 & 75).  On February 25, 2010, Munn e-mailed Herstein and Griess informing them that Bennie had contacted the Governor and Bennie told the Governor that the Department's investigation into the invitation was politically motivated.  (Am. Compl. ¶ 83).  Munn then wrote a memorandum to the Governor providing background regarding why the Department was investigating Bennie.  (Am. Compl. ¶ 84).  On March 1, 2010, Griess forwarded LPL's response e-mail about the dinner invitation to Munn (Am. Compl. ¶ 87).

On March 9, 2010, Griess forwarded another e-mail to Munn from LPL regarding a Sun Life Insurance Seminar which lacked a disclosure. (Am. Compl. ¶ 90).  In the e-mail, LPL admitted that it erroneously approved the invitation and that Bennie should have disclosed his affiliation with LPL on the invitation.  (Am. Compl. ¶ 89).  On March 10, 2010, Herstein informed Munn that he instructed Griess to take no action against Bennie.  (Am. Compl. ¶ 92).

On December 17, 2010, after LPL filed a U-5 disclosing that it had terminated Bennie for cause, Munn signed an order approving Bennie's registrations, but placing restrictions on them.  (Am. Compl. ¶ 104, Ex. A).  On February 17, 2011, Munn signed another order lifting some of the restrictions on Bennie's registrations that were put in place in the December Order.  (Am. Compl. ¶ 113, Ex. B).  All restrictions were lifted in an order dated March 14, 2011 (Am. Compl., Ex. C).

### 2.   Bennie's Allegations Against Munn Relating to the Invitations Fail to State A Claim.

Bennie's allegations against Munn fall into two categories: (1) the investigation of the invitations and (2) the issuance of the Orders.  With respect to the dinner invitation, Bennie's Amended Complaint establishes that the Department took no action against Bennie.  With respect to the Sun Life Insurance invitation, LPL admitted that the invitation should have disclosed Bennie's affiliation with LPL and that LPL "erroneously believed he [Bennie] was distributing invitation on approved letterhead that contained broker dealer disclosure." (Am. Compl. ¶ 89).  In other words the

Department's inquiry into this matter was justified.   One day after receiving this explanation from LPL, the Department ended its inquiry into this issue.  (Am. Compl. ¶ 92).   Bennie does not allege that he was harmed in any way by Munn's actions regarding the invitations.

Bennie's claims against Munn should proceed, if at all, only on the issue of the December and February orders which Munn signed.  All other claims against Munn should be dismissed.

### D.    Bennie's Claim Against Griess Relating to the Orders Fail to State a Section 1983 Claim.

While Bennie makes a number of allegations against Griess, he does not allege that Griess signed the December or February Orders.  Accordingly, Griess cannot be liable for any damages Bennie alleges flow from those Orders.  Bennie's claims against Griess that relate to the Orders fail to state a claim and should be dismissed.

## II.    CLAIMS I AND IV SHOULD BE DISMISSED BECAUSE BENNIE HAS NO PROPERTY RIGHT IN AN UNCONDITIONAL REGISTRATION, HAS NO CONSTITUTIONALLY PROTECTABLE LIBERTY INTEREST IN HIS REPUTATION, AND WAS NOT DENIED A LIBERTY INTEREST IN HIS RIGHT TO PURSUE AN OCCUPATION.

Claims I and IV allege a denial of procedural due process.  "Procedural due process claims require a two-step analysis.  Initially, a plaintiff must demonstrate that the state deprived him of some 'life, liberty, or property' interest.  If successful, the plaintiff must then establish that the state deprived him of that interest without sufficient 'process.'" Krentz v. Robertson, 228 F.3d 897, 902 (8th Cir. 2000); Swarthout v.

<u>Cooke</u>, 131 S. Ct. 859, 861 (U.S. 2011).  The possession of a protected life, liberty, or property interest is a "condition precedent" to invoking the government's obligation to provide due process of law. <u>Movers Warehouse Inc. v. City of Little Canada</u>, 71 F.3d 716, 718 (8th Cir.1995).  "Property interests are not created by the Constitution but rather stem from an independent source such as state law." <u>Stauch v. City of Columbia Heights</u>, 212 F.3d 425, 429 (8th Cir.2000).

> **A.**   **<u>Nebraska Law Clearly Allows The Department to Approve a Registration With Conditions Without First Holding a Hearing</u>.**

The Securities Act of Nebraska expressly authorizes the Director to place conditions on an applicant's registration without first holding a hearing.  <u>See</u> Neb. Rev. Stat. § 8-1103(4)(d).  The Department's actions in this case were in compliance with this express statutory authority.

> **B.**   **<u>An Unconditional Registration is Not a Property Right Under Nebraska Law</u>.**

Bennie alleges that under Nebraska law, he has a property interest in his agent of a broker-dealer and investment adviser representative registrations.  (Am. Compl. ¶ 129).  On the face of the complaint, Defendants did not deprive Bennie of these registrations.   The Department *approved* Bennie's registrations subject to certain conditions.  (Am. Compl., Ex. A & B).  "The DEPARTMENT, by and through its Director, finds that such applications **should be approved with the following**

**conditions**…" Id. (emphasis added).  To the extent Bennie's complaint is premised on being denied registration, it fails as a matter of law.

Because the Department approved Bennie's registrations, his claim in this lawsuit could only be that he had a property right in obtaining a registration which had no conditions.  Nebraska has never recognized an unconditional registration under the Securities Act of Nebraska as a constitutionally protected property right.

1. **Because the Department Has Unfettered Discretion To Place Conditions on a Registration, Bennie Has No Property Right in an Unconditional Registration.**

Under the Securities Act of Nebraska, an agent of a broker-dealer or an investment adviser representative may apply for registration with the Department. Neb. Rev. Stat. § 8-1103(3) (Reissue 2007).  The Director has unfettered discretion to place conditions on an applicant's registration.  "The director may restrict or limit an applicant as to any function or activity in this state for which registration is required under the Securities Act of Nebraska."  Neb. Rev. Stat. § 8-1103(4)(d) (Reissue 2007).

In Entergy Arkansas, Inc. v. Nebraska, 161 F. Supp. 2d 1001 (D. Neb. 2001) (Kopf, J.), this Court addressed whether applicants had a property right in a license to operate a nuclear waste disposal facility.  This Court held that when determining whether the license rose to the level of a property right the "pivotal question" was whether the state's discretion to issue the license was "substantially limited."  Id. at 1003.  If the state's discretion to issue the license was substantially limited, then the applicant had a

property right in the license.  If the state's discretion was not substantially limited, then the applicant had no constitutionally protected property right.  Id.  This Court held that because the state had discretion whether to issue the license based on concerns for public health and safety, the state's discretion was not substantially limited and the applicants did not have a property right in the license.

Here, the Director's discretion as to whether to place conditions on a registration is not "substantially limited."  Section 8-1103(4)(d) provides the Director with unfettered discretion to place restrictions or limits on the activities an applicant conducts in Nebraska.  The Director exercised this statutory discretion by placing conditions on Bennie's registration pending the Department's investigation of allegations made by Bennie's former employer, LPL, that Bennie engaged in inappropriate conduct.  (Am. Compl. ¶ 97).  When the Department concluded its investigation, the conditions first imposed on Bennie's registrations on December 17, 2010, were removed.  (Complaint, Ex. C).  Because the Director has "unfettered discretion" to place conditions on an applicant's registration, Bennie has no property interest in an unconditional registration. See Movers Warehouse, Inc. v. City of Little Canada, 71 F.3d 716, 719 (8th Cir. 1995) (holding that a party does not have a property interest in a license where a regulatory agency has "unfettered discretion" as to whether to grant the license.)

2.    **A License to Conduct Business Is Not a Property Interest Under Nebraska Law.**

In essence, a registration under the Securities Act of Nebraska is a license to transact certain securities related activities in the state.  Without being registered, it is unlawful to transact business as an agent of a broker-dealer or as an investment adviser representative.  Neb. Rev. Stat. § 8-1103(1) & (2) (Reissue 2007).  In analogous cases, Nebraska courts have held that a party has no property interest in a license issued by a regulatory agency of the State.  See Application of Petersen & Petersen, 154 Neb. 877, 879, 50 N.W.2d 222, 223 (1951) ("It has been considered in this jurisdiction that a certificate of convenience and necessity is a permit or license, and is not property in a legal or constitutional sense."); City of Lincoln v. Nebraska Liquor Control Comm'n, 208 Neb. 630, 633, 304 N.W.2d 922, 924 (1981) ("a liquor license is a purely personal privilege, does not constitute property, and vests no property rights in a licensee which can be transferred); Johnson v. Radio Station W O W, 144 Neb. 406, 434, 14 N.W.2d 666, 668 (1944) (holding that an F.C.C. license to operate a radio station "is a permissive grant of a privilege and creates no vested property right in the licensee."); Prucha v. Dep't of Motor Vehicles, 172 Neb. 415, 423, 110 N.W.2d 75, 82 (1961) ("A license to operate an automobile upon the highways of the state is a privilege and not a property right…").  Because Bennie had no property right in unconditional registrations, he has

failed to establish a condition precedent to a Section 1983 action.  Accordingly, his Due

Process rights were not violated by the issuance of the Orders.

   **B.**   **Bennie Does Not Have A Constitutionally Protected Liberty Interest in His Reputation.**

   Bennie alleges he has a liberty interest in his "good name and reputation."  (Am.

Compl. ¶ 129).  Bennie's theory is that because the Department issued Orders which

placed conditions on his registration, his good name and reputation were damaged.

Bennie's allegations do not rise to the level of a constitutionally protected liberty

interest.

   "It is well established that defamation or injury to reputation by itself does not

state a constitutional deprivation." Brayman v. United States, 96 F.3d 1061, 1066 (8th

Cir.1996); Paul v. Davis, 424 U.S. 693, 712, (1976) (holding that injury to reputation is

neither a liberty nor property interest guaranteed against state deprivation without due

process); Green v. DeCamp, 612 F.2d 368, 370 (8th Cir. 1980) (allegations of a loss of

business as a result of the damage to reputation, without more, are not sufficient to state

a claim under Section 1983); Rem v. U.S. Bureau of Prisons, 320 F.3d 791, 794 (8th Cir.

2003) (holding plaintiff had no protected liberty interest in his reputation); Connecticut

Dept. of Public Safety v. Doe, 538 U.S. 1, 6-7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003) ("mere

injury to reputation, even if defamatory, does not constitute the deprivation of a liberty

interest"); Siegert v. Gilley, 500 U.S. 226, 233-34 (holding that there was no

constitutionally protected liberty interest in one's reputation).

In <u>Paul</u>, the plaintiff brought a Section 1983 action against a police chief who circulated flyers with the names and photographs of individuals arrested for shoplifting.  The plaintiff, whose name and photo appeared on the flyer, alleged that these actions deprived him of his liberty interest in his good name and reputation without due process.  The Supreme Court affirmed the dismissal of the complaint for failing to state a claim because the plaintiff's good name and reputation was not a liberty interest protected by the Due Process Clause.

"To establish a liberty interest under the Fourteenth Amendment for injury to reputation a party must show not only that he was stigmatized but also that he was stigmatized in connection with a denial of a right or status previously held under state law." <u>Mangan v. Cullen</u>, 870 F.2d 1396, 1399 (8th Cir. 1989).  The cases in which this right is implicated are very narrow occurring only where the plaintiff's reputation is "called into question in a manner that makes it virtually impossible for the employee to find new employment in his chosen field." <u>Townsend v. Vallas</u>, 256 F.3d 661, 670 (7th Cir. 2001).

While Bennie alleges that the orders stigmatized him (Am. Compl. ¶ 136), he has failed to allege facts that this alleged stigma made it "virtually impossible" for him to find employment in his field.  In fact, Bennie alleges that he is fully registered, and works as a securities broker-dealer agent and investment adviser representative.  (Am. Compl. ¶ 6, Ex. C).  Accordingly, Bennie has failed to allege facts from which the Court

could plausibly conclude that the Defendants' alleged actions deprived him of a constitutionally protected liberty interest in his reputation and good name.

**C.**    **Bennie Was Not Denied a Constitutionally Protected Liberty Interest in Pursuing His Occupation and Vocation.**

Finally, Bennie alleges he has a liberty interest in pursuing his occupation and vocation.  (Am. Compl. ¶ 129).  "The Constitution only protects [the] liberty [to follow a chosen profession free from unreasonable governmental interference] from state actions that threaten to deprive persons of the right to pursue their chosen occupation.  State actions that exclude a person from one particular job are not actionable in suits.... It is the liberty to pursue a particular calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." Habhab v. Hon, 536 F.3d 963, 968 (8th Cir. 2008) (quoting Piecknick v. Com. of Pa., 36 F.3d 1250, 1259-60 (3d Cir.1994)).

As discussed above, the Department's orders did not prohibit Bennie from pursuing his occupation or vocation.  His registrations were approved allowing him to continue advising current clients in his chosen occupation.  (Am. Compl. Ex. A). However, the registrations contained a condition that he not solicit new clients.  (Am. Compl. Ex. A & B).  All conditions on Bennie's registrations were lifted in March when the Department concluded its investigation into the allegations made by LPL that Bennie was terminated for violating firm policies.  (Am. Compl. Ex. C).  Because Bennie was never deprived of his right to pursue his chosen occupation, he has failed to

establish that he was deprived of a liberty interest.  See Abcarian v. McDonald, 617 F.3d 931, 941-42 (7th Cir. 2010) (dismissing Section 1983 claim because "One simply cannot have been denied his liberty to pursue a particular occupation when he admittedly continues to hold a job-the same job-in that very occupation.").

Having failed to identify a constitutionally protected property or liberty interest, Bennie has failed to state a claim that his due process rights were denied.  Accordingly, Bennie's First and Fourth Claims should be dismissed for failing to state a claim.

### III.   CLAIMS I AND IV FAIL TO STATE A DUE PROCESS CLAIM BECAUSE BENNIE DID NOT REQUEST A HEARING ONCE THE DEPARTMENT IMPOSED CONDITIONS ON HIS REGISTRATIONS.

Bennie alleges the Department placed conditions on his securities registrations without affording him a hearing.  Bennie alleges that this act deprived him of a property interest in his registrations, and a liberty interest in his reputation and ability to pursue his occupation, without procedural due process.  (Am. Compl. ¶ 137).  "Due process requires adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1456 (8th Cir. 1996) (quoting Post v. Harper, 980 F.2d 491, 493 (8th Cir.1992)).

Bennie was not deprived of due process because state statute, and the Department's regulations, provided Bennie with the ability to request a formal hearing after the Orders were entered.  Bennie's failure to request a hearing under the procedures provided by law is fatal to his due process claim.

20

### A.   Bennie Failed to Request a Hearing Under the Processes Available to Him.

"Under federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." Wax 'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir.2000); Alvin v. Suzuki, 227 F.3d 107, 117 (3d Cir.2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." Suzuki; see also McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir.1995), cert. denied, 516 U.S. 1146, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996).

Here, state statute, and the Regulations of the Department of Banking and Finance, afforded Bennie at least two processes by which he could have requested a formal hearing to review the Department's orders.   First, Neb. Rev. Stat. § 8-1119 provides:  "Any person aggrieved by a final order of the director may appeal the order, and the appeal shall be in accordance with the Administrative Procedures Act."  Bennie could have, but failed to, appeal any of the orders which he now claims deprived him of due process.

Second, 49 N.A.C. § 5.003.02 provides: "Any person may petition the Department for the issuance of a declaratory order as to the applicability of a specific statute, rule, or

order within the primary jurisdiction of the Department to the person's specific circumstances."  A declaratory order may be requested regarding the applicability of "an outstanding order." 49 N.A.C. § 5.003.03A.  Under this procedure, Bennie could have sought a declaratory order that the orders which placed conditions on his registration should be vacated.  He failed to utilize this procedure.

Because there were "processes on the books" which provided Bennie due process, and Bennie failed to avail himself of any of those processes, he cannot now claim that he was denied due process.  Accordingly, Claims I and IV which allege violations of due process should be dismissed.

IV.     **BECAUSE PLAINTIFF FAILS TO ALLEGE THAT ANY ACTIONS WERE TAKEN AGAINST BBWM OR THAT BBWM WAS DEPRIVED OF A CONSTITUTIONAL RIGHT, AND BECAUSE BENNIE CANNOT ASSERT THE CONSTITUTIONAL RIGHTS OF THIRD PARTIES, BBWM'S CLAIMS SHOULD BE DISMISSED.**

Bennie is named as a Plaintiff in his individual capacity and on behalf of BBWM. The allegations of the Complaint address only activities that were allegedly directed towards Bennie.  No substantive allegations relate to BBWM.  Because Plaintiff fails to allege that Defendants took any actions against BBWM, or that its constitutional rights were violated, all claims Bennie purports to assert on behalf of BBWM should be dismissed for lack of standing.  See Faibisch v. Univ. of Minnesota, 304 F.3d 797, 801 (8th Cir. 2002) (holding that if a party lacks standing, the Court lacks subject matter jurisdiction and the claims should be dismissed under rule 12(b)(1).

### A.     Bennie Does Not Allege Facts That BBWM Was Deprived Of Its Civil Rights In Violation of Section 1983.

The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable *to the party injured* in an action at law, suit in equity, or other proper proceeding for redress ...

(emphasis added). To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) "that some person has deprived him of a federal right," and (2) "that the person who has deprived him of that right acted under color of state...law." Gomez v. Toledo, 446 U.S. 635, 640, (1980) (citing Monroe v. Pape, 365 U.S. 167, 171 (1961)); Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998) ("To state a claim under section 1983, a plaintiff must set forth facts that allege an action performed under color of state law that resulted in a constitutional injury."). As a general rule, a plaintiff may only assert his own injury and "cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 498-99 (1975).

Here, the only allegation in the Amended Complaint that refers to BBWM is in Paragraph 21 where Bennie alleges he was an agent of a broker dealer and investment adviser representative who operated as BBWM. (Am. Compl. ¶ 21). Neither of the Department's orders make any reference to BBWM or prohibit BBWM from doing anything. (Am. Compl. Exs. A &B). Plaintiff alleges that as a result of these orders,

"**Mr. Bennie** suffered significant damages…." (Am. Compl. ¶¶ 139, 147, 156) (emphasis added).  Bennie does not allege that BBWM suffered a separate injury.

Because Bennie does not allege that Defendants deprived BBWM of its rights, took any actions against BBWM, or that BBWM suffered a "constitutional injury" as a result of the Defendants' alleged actions, BBWM's Section 1983 claims (Claims I-III) fail to state a claim and must be dismissed.

**B.**     **Plaintiff Dooes Not Allege the Securities Act of Nebraska Was Applied in an Unconstitutional Manner Against BBWM.**

Bennie alleges Neb. Rev. Stat. § 8-1103(4)(d), is unconstitutional "as applied to **Mr. Bennie**."   (Am. Compl. ¶ 159) (emphasis added).   Bennie does not allege that Section 8-1103(4)(d) was applied to BBWM.  Because Bennie does not allege that Section 8-1103(4)(d) was applied to BBWM, Bennie's allegations fail to state claim as to BBWM.

In addition, Bennie lacks standing to assert an "as applied" constitutional challenge on behalf of BBWM.  As a general rule, an individual or entity does not have standing to assert the constitutional rights of third parties. Singleton v. Wulff, 428 U.S. 106, 114, (1976); Carter v. Romines, 560 F.2d 395, 395 (8th Cir.1977).  Thus, even if Bennie's complaint were read to allege that Defendants deprived BBWM of its constitutional rights, Bennie does not have standing to assert BBWM's constitutional claim.   Claim IV should be dismissed to the extent Bennie is seeking to assert constitutional claims on behalf of BBWM.

## VI.    WALTER, HERSTEIN AND GRIESS CANNOT BE LIABLE FOR THE DEPARTMENT'S ORDERS BECAUSE THEY DID NOT SIGN THE ORDERS.

Plaintiff alleges the Department issued two orders which placed restrictions on Bennie's registration.  (Am. Compl ¶ 104 & 113).  Both orders were signed by John Munn in his official capacity as Director of the Nebraska Department of Banking and Finance.  (Am. Compl. Exs. A & B).  "Because vicarious liability is inapplicable to...§ 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's __own__ individual actions*, has violated the Constitution." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).    Thus, "each Government official, his or her title notwithstanding, is only liable **for his or her own misconduct**." Id. at 1949 (emphasis added).  See also Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (noting that in a Section 1983 case, officials are only liable for their own actions).  Because neither Walter, Herstein, nor Griess signed the orders, they cannot be liable for any injuries allegedly resulting from the orders.  Bennie's claims premised on a deprivation of rights as a result of the orders fails to state a claim against Defendants Walter, Herstein, and Griess.  Bennie's prayer for damages and attorney fees arising out of the orders against these three Defendants should be dismissed.

### CONCLUSION

Defendants respectfully request that the Court enter an order dismissing (1) all claims against Herstein (2) all claims against Walter (3) all claims against Munn, other

than claims relating to the Orders (4) all claims against Griess relating to the Orders; (5) all Due Process Claims (Claims I and IV) against all Defendants for failing to state a claim; (6) all claims asserted by Bennie on behalf of BBWM and/or (7) all claims against Herstein, Griess, and Walter arising out of the Orders.

> JOHN MUNN, JACK E. HERSTEIN, RODNEY R. GRIESS, JACKIE WALTER, in their official and individual capacities, Defendants

> BY:  /s/ Timothy J. Thalken_____
> Mark C. Laughlin, #19712
> Timothy J. Thalken, #22173
> FRASER STRYKER PC LLO
> 500 Energy Plaza
> 409 South 17th Street
> Omaha, Nebraska  68102-2663
> (402) 341-6000
> mlaughlin@fraserstryker.com
> tthalken@fraserstryker.com
> ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Steven Grasz
> David M. Newman
> HUSCH BLACKWELL LLP
> 1620 Dodge Street, Suite 2100
> Omaha, NE 68102
> ATTORNEYS FOR PLAINTIFF

> /s/ Timothy J. Thalken_____

600431.01