IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT R. BENNIE JR., individually, and on behalf of BOB BENNIE WEALTH MANAGEMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JOHN MUNN, in his official and individual capacity, JACK E. HERSTEIN, in his official and individual capacity, RODNEY R. GRIESS, in his official and individual capacity, and JACKIE L. WALTER, in her official and individual capacity, <br><br> Defendants. | 4:11CV3089 <br><br> **MEMORANDUM AND ORDER** |

### BACKGROUND

Plaintiff Robert R. Bennie, Jr., is an agent of a securities broker-dealer and investment adviser representative who is registered with the Nebraska Department of Banking and Finance ("Department") and was formerly associated with LPL Financial Corporation.[1]  Bennie brings this § 1983 action against four employees of the

---

[1] Bennie alleges that he has been registered with the Nebraska Department of Banking and Finance as an agent and investment adviser representative continually since 1995; he was associated with LPL Financial Corporation from March 1997 to November 2010; and during the time he was with LPL "and subsequently," he operated his business as "Bob Bennie Wealth Management, Inc." (Filing 26 ¶¶ 21, 23.)

Department, claiming that the defendants violated his rights to due process, equal protection, and free speech when they "embarked on a concerted scheme of harassment aimed at Mr. Bennie because of his political views." (Filing 26, Amended Complaint § 29.) Bennie alleges that this "concerted scheme" included five separate investigations in four months that culminated in the issuance of orders—without notice or hearing—that limited his ability to work as a securities broker-dealer and investment adviser representative, resulting in a significant loss of income, clients, future profits, and "assets under management," as well as harm to Bennie's business reputation and good will. (Filing 26 ¶¶ 139, 147, 156 & Exs. A-C.)

Bennie's amended complaint alleges that he is a "leader in the 'Tea Party' movement in Lincoln, Nebraska" who funded and appeared in television advertisements directed at viewers in the Lincoln area from August to December 2009. The script of the advertisement stated:

> "Hi folks, I'm Bob Bennie. If you're an investor and understand capitalism has made our economy the envy of the world, . . . if you know it's a basic American right to keep and bear arms to protect yourself and your family [change to shot of Bob on his horse wearing a cowboy hat], if you believe freedom is what makes America great . . . Then I'd like to meet you. We'll discuss how I can help you to protect and grow your wealth in this volatile economy. If we decide to do business, I'll contribute $100 towards your purchase of a firearm. God Bless You and God Bless America!"

(Filing 26 ¶¶ 26, 28.) Bennie alleges that after this television advertisement appeared, the defendants' "harassment" of him began. In 125 detailed paragraphs which shall not be repeated here, Bennie's amended complaint describes each of the defendants' involvement in the Department's continual investigation, regulation, and audit of Bennie's work as a securities broker-dealer and investment adviser representative from November 2009 to April 2011, the timing and circumstances of which suggest

that the defendants' actions were motivated, in whole or part, by Bennie's political speech and political views.

Bennie's amended complaint states that "as a result of the pressure from the Defendants, LPL [Financial Corporation] agreed that Mr. Bennie would be reassigned to a Senior Analyst for supervision"; that defendant Griess "expressly threatened LPL with administrative action if it did not take punitive action against Mr. Bennie for publications and advertising that Mr. Griess characterized as non-compliant"; that "LPL abruptly terminated its relationship with Mr. Bennie"; that upon his separation from LPL, Bennie associated with Prospera Financial Services, Inc., and notified the Nebraska Department of Banking and Finance of his transfer from LPL to Prospera; that LPL filed a form with the Department claiming that Bennie's termination was "due to violation of internal firm policies and procedures"; and that Bennie and Prospera provided the Department with the results of an independent audit that showed that Bennie had not acted improperly or in violation of LPL policies and procedures. (Filing 26 ¶ 71, 78, 94, 97-99.)

Following these events, and "without any contact with Mr. Bennie and without any type of notice or a hearing, the Department summarily issued an order . . . that suspended Mr. Bennie's ability to operate his thirteen-year-old investment business" in December 2010. The order approved Bennie's application for registration as a broker-dealer for Prospera Financial Services, Inc., but placed several conditions on the registration, including: (1) limiting all of Bennie's securities and advisory activities to Bennie's existing customers; (2) prohibiting Bennie from advertising or soliciting new clients; (3) barring Bennie from acting as a "principal or in any compliance or supervisory capacity" with regard to other Prospera agents; and (4) requiring Bennie to timely comply with the Department's requests for information during the Department's "ongoing inquiry into the circumstances surrounding Bennie's termination by LPL." (Filing 26 ¶ 104 & Ex. A.) Bennie alleges that this

3

order—which was distributed publicly via the Department's website—destroyed 60 to 70 percent of his revenues (which were generated from new clients), prevented him from registering in other states, and cut off his business with several major insurance companies. (Filing 26 ¶ 109-110.)

After Bennie complained to the Governor's Office, the Nebraska Attorney General, and Department officials regarding the denial of notice and a hearing, Defendants issued, and posted on its website, an amended order in February 2011 which removed the restriction limiting all of Bennie's securities and advisory activities to Bennie's existing customers, but left all other restrictions intact. (Filing 26, Ex. B.) This order also mentioned the Department's "ongoing inquiry into the circumstances surrounding Bennie's termination by LPL." (Filing 26-2 at CM/ECF p. 1.) Bennie alleges that after the issuance of these orders, many of his LPL clients declined to transfer their accounts to Prospera and Bennie lost $25,000,000 in "Assets Under Management." (Filing 26 ¶ 114.)

After an audit of Bennie's records and finding no basis for further restrictions on Bennie's registration, the Department issued a third order in March 2011 fully approving Bennie's registration as an agent and investment adviser representative of Prospera. (Filing 26 ¶ 116 & Ex. C.) Despite the issuance of this order, Bennie alleges that the Department continued with "harassing inquiries and numerous demands for records and information" from Bennie and Prospera, including requiring Prospera to transmit all of Bennie's account balances to the Department on a weekly basis and documentation proving that Bennie had not opened any new accounts while the Department's first two orders were in effect. (Filing 26 ¶ 118-121.)

Bennie alleges that the December 2010 and February 2011 orders were published on the Department's website until May 12, 2011, and these orders remain available to the public upon request. (Filing 26 ¶ 122.)

Based on these allegations, Bennie asserts four claims:

•Claim 1: § 1983 Due Process—The defendants deprived Bennie of his property interest in his agent and investment adviser registration and his liberty interests in pursuing his occupation and vocation and his good name and reputation without procedural due process.  (Filing 26 ¶¶ 126-139.)

•Claim 2: § 1983 Equal Protection—Motivated by Bennie's political speech and political views, the defendants singled out Bennie for intentional harassment and discrimination and treated him differently than other similarly situated individuals who publicly advertise their investment services and who have been required to notify the Department when they associate with a new broker-dealer. (Filing 26 §§ 140-147.)

•Claim 3: § 1983 First Amendment Free Speech—Defendants used their power as government officials to impose penalties and take other punitive actions against Bennie due to his political views and public statements on matters of public concern. (Filing 26 §§ 148-156.)

•Claim 4: Unconstitutionality of Nebraska Securities Act as Applied—Neb. Rev. Stat. § 8-1103(4)(d) in the Nebraska Securities Act, as applied to Bennie, violates the Due Process Clause of the Nebraska and United States constitutions because the statute allowed Bennie to be subjected to public censure, stigma, and suspension of his securities registration, and to suffer a significant impact on his registration in other states, without due process of law.

Bennie requests more than $6.4 million in damages against Defendants in their individual capacities; an order directing Defendants to "cease disseminating" to the public two of the orders restricting Bennie's activities as a securities broker-dealer and

investment adviser representative and to "expunge any references" to such orders from all public records under the Department's control; and "only upon a finding that state law does not require Notice and a Hearing to Mr. Bennie, declare the Securities Act of Nebraska unconstitutional as applied by the Defendants, and enjoin the Defendants and their successors from continuing to implement the challenged statutory provisions and related regulations and practices." (Filing 26 at CM/ECF pp. 31-32.)

## *MOTION TO DISMISS*

Defendants have filed a motion to dismiss (filing 29) pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) on the following grounds:

1. Bennie's claims against Herstein and Walter should be dismissed in their entirety, and against Munn and Griess in part, because Bennie failed to allege specific facts that would establish that these defendants were personally involved in depriving Bennie of a constitutional right. Further, Bennie's claims against Walter, Herstein, and Griess relating to the Department's orders should be dismissed because these defendants did not sign the orders and cannot be liable for them.

2. Bennie's due process claims (Claims I and IV) should be dismissed because Bennie has not alleged that Defendants deprived Bennie of a constitutionally protected property or liberty interest.

3. Nebraska law provided Bennie with at least two procedures by which he could have requested a hearing once the Department of Banking and Finance imposed conditions on his registration. Bennie's failure to avail himself of those procedures is fatal to his due process claims (Claims I and IV).

4. Bennie's claims on behalf of Bob Bennie Wealth Management, Inc., ("BBWM") should be dismissed because there are no allegations that Defendants took any actions against BBWM or that BBWM was harmed. In any event, Bennie cannot assert the constitutional rights of BBWM.

(Filing 30 at CM/ECF p. 2.)

*A.    Failure to Allege Personal Involvement of All Defendants & Failure of Walter, Herstein, and Griess to Sign Department Orders*

> Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id*. It is not, however, a "probability requirement." *Id*. Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citations abbreviated).

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege a set of facts which, if proven true, demonstrate that the defendants violated a right secured by the Constitution and laws of the United States while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Because "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution, *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990), the plaintiff

7

must plead facts showing the defendants' personal involvement in, or responsibility for, the alleged constitutional violation. See *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001); *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999).

Suffice it to state that the 125 paragraphs of factual background contained in Bennie's amended complaint sufficiently allege that each of the defendants was personally involved in, or responsible for, actions that resulted in the violation of Bennie's constitutional rights. Bennie alleges specific and detailed facts that suggest—regardless of which defendant signed the Department orders that officially restricted Bennie's business activity—that Defendants used their authority as state regulators to interfere with Bennie's business as a registered broker-dealer agent and investment adviser representative because of his exercise of his First Amendment rights in airing a television commercial that clearly conveyed his political views and in acting as "Lincoln's Tea Party Voice." (Filing 26 ¶¶ 52-59.) While these allegations may not ultimately survive a motion for summary judgment, they are sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Therefore, the defendants' motion to dismiss on the grounds that (a) Bennie failed to allege that each of the defendants was personally involved in depriving him of a constitutional right and (b) that defendants Walter, Herstein, and Griess did not sign the Department orders restricting Bennie's business activities must be denied.

### B. *Failure to Allege Constitutionally Protected Property or Liberty Interest*

As the basis for his procedural due process claims (Claims I and IV), Bennie's amended complaint alleges that he "has a property interest in his agent and investment adviser registration, a liberty interest in pursuing his occupation and vocation, and a liberty interest in his good name and reputation." (Filing 26 ¶ 129.) The defendants move to dismiss these claims because Bennie has neither a property right in an unconditional registration nor a liberty interest in his reputation, and because Bennie

8

was not denied a liberty interest in his right to pursue an occupation. ([Filing 30](#) at CM/ECF p. 12.)

To prevail on a procedural due process claim, a plaintiff must first "establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *[Schmidt v. Des Moines Public Schools](#)*, 655 F.3d 811, 817 (8th Cir. 2011) (quotation & citation omitted). "[W]here no such interest exists, there can be no due process violation." *[Singleton v. Cecil](#)*, 176 F.3d 419, 424 (8th Cir. 1999) (quotation & citation omitted).

### 1.    *Property Interest in Registration*

"A protected property interest exists where a plaintiff has a legitimate claim of entitlement to a benefit that is derived from a source such as state law." *[Schueller v. Goddard](#)*, 631 F.3d 460, 462-63 (8th Cir. 2011) (quotations & citations omitted). Such "entitlements" are not created by the Constitution, but are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *[Keating v. Nebraska Public Power Dist.](#)*, 660 F.3d 1014, 1017 (8th Cir. 2011).

Bennie argues that the conditions placed on his registration by the Department "rendered the so-called 'approval' effectively meaningless in terms of his ability to enjoy the rights of the registration through maintaining or growing his business," ([Filing 33](#) at CM/ECF p. 80). However, as explained below, Bennie does not have a property right to his registration free from the licensing agency's regulation. Even assuming for purposes of this motion that Bennie's registration as an agent of a broker-dealer and an investment adviser representative under the Securities Act of Nebraska, Neb. Rev. Stat. §§ [8-1101](#) through [8-1123](#), confers a property interest that

9

is entitled to procedural due process protection, Bennie's complaint does not allege that the defendants *deprived* him of such an interest. To the contrary, the Department in this case *approved* Bennie's registration subject to certain conditions—conditions which allowed Bennie to continue servicing his existing clients.

In *Neal v. Fields*, 429 F.3d 1165 (8th Cir. 2005), the Eighth Circuit Court of Appeals analyzed whether a registered nurse licensed by State of Arkansas stated a procedural due process claim when she alleged that the Arkansas State Board of Nursing told an inquiring prospective employer that the nurse's license had been "red flagged" because she was under investigation (without disclosing the nature of the investigation), and when the board failed to hold a "prompt name-clearing hearing." *Id*. at 1166. The parties agreed that the plaintiff's state nursing license conferred a property interest that was entitled to procedural due process protection. The Eighth Circuit Court of Appeals concluded that the nurse "suffered no deprivation of a constitutionally protected property or liberty interest as a matter of law" because her license had not been suspended or revoked, her "right to practice nursing in Arkansas remain[ed] intact," and state law did "not grant nurses a property right to practice nursing free of the licensing agency's regulation." *Id*. at 1166-67.

As to the plaintiff nurse's argument that the board's disclosure of a pending investigation cast "an injurious cloud on her fitness as a nurse, making her less employable," the court noted that because the Arkansas licensing statutes provided for suspension and revocation of one's nursing license—actions that would "invariably [be] preceded by a Board investigation"—and the fact that the Arkansas Administrative Procedure Act would provide rights to notice, to show compliance with license requirements, to compel a hearing, and to judicial review of an adverse agency action,

> licensees can reasonably expect that the fact of an on-going investigation
> will become public knowledge or even be affirmatively disclosed. [The

> plaintiff nurse] cites no authority for the proposition that adverse inferences third parties draw from the fact of on-going regulatory actions constitute the deprivation of a licensee's property interest that gives rise to a federal constitutional right to an immediate due process hearing. The proposition would frustrate and delay the good faith actions of state and federal regulators in countless regulatory situations. We reject it as a matter of law.

*Id.* at 1167.

Here, as in *Neal*, the Nebraska Securities Act provides for the suspension and revocation of one's license, Neb. Rev. Stat. § 8-1103(9)—results that would "invariably [be] preceded by a Board investigation," *Neal*, 429 F.3d at 1167—and final orders of the director may be appealed in accordance with the Administrative Procedure Act. Neb. Rev. Stat. § 8-1119. Accordingly, licensees like Bennie should reasonably expect that investigations by the Department may occur and that such investigations may become public knowledge. Further, the fact that Bennie's business reputation might be harmed or stigmatized by such an ongoing investigation cannot serve as the basis for a federal constitutional right to an immediate due process hearing. As stated in *Neal*, such a proposition "would frustrate and delay the good faith actions of state and federal regulators in countless regulatory situations," something the Eighth Circuit Court of Appeals has "reject[ed] . . . as a matter of law." *Neal*, 429 F.3d at 1167.

Thus, Bennie has failed to state a procedural due process claim with regard to his claimed property interest in his registration.

### 2. Liberty Interest in Occupation & Vocation

"The Constitution only protects [the] liberty [to follow a chosen profession free from unreasonable governmental interference] from state

11

actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits. . . . It is the liberty to pursue a particular calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment."

*Habhab v. Hon*, 536 F.3d 963, 968 (8th Cir. 2008) (quoting *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1259-60 (3rd Cir. 1994)).

Bennie claims that the defendants' actions unreasonably interfered with his right to pursue his chosen profession because the Department's orders "barred Bennie from all advertising or even accepting new clients" so he could "not sustain . . . , much less grow[] his business." (Filing 33 at CM/ECF pp. 86-87.)

The Fourteenth Amendment does not secure the right to "sustain" and "grow" one's business; rather, the due process issue is whether the Department's actions prohibited Bennie from pursuing his occupation or vocation. It is undisputed that Bennie's registration was approved with conditions, and he was allowed to continue advising current clients in his chosen occupation. The conditions that were placed on Bennie's registration were lifted when the Department concluded its investigation into the allegations made by LPL that Bennie was terminated for violating firm policies. Because Bennie continued to perform the same occupation or vocation which he had been registered to perform in Nebraska since 1995, he has failed to allege that he was *deprived* of a constitutionally protected liberty interest. *See Abcarian v. McDonald*, 617 F.3d 931, 941-42 (7th Cir. 2010) ("One simply cannot have been denied his liberty to pursue a particular occupation when he admittedly continues to hold a job—the same job—in that very occupation."); *Neal*, 429 F.3d at 1167 ("Neal's complaint fails to allege a *deprivation* of her constitutionally protected property interest. Her license has not been suspended . . . .").

Thus, Bennie has failed to state a procedural due process claim with regard to his claimed liberty interest in pursuing his chosen occupation and vocation.

### 3. Liberty Interest in Good Name & Reputation

> Damage to reputation alone . . . is not sufficient to invoke the procedural protections of the due process clause." *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir.2003) (citing *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). Instead, "[t]he loss of reputation must be coupled with some other tangible element to rise to the level of a protectible property interest." *Id*. We refer to this as the "stigma plus" test. *Id*. The appellants have clearly alleged defamatory damage to their reputation, but they have not alleged any other tangible harm. Since damage to reputation is not alone sufficient to invoke procedural due process, the district court correctly dismissed the procedural due process claim.

*Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010). *See also Neal*, 429 F.3d at 1168 ("Injury to reputation alone is not a liberty interest protected under the Fourteenth Amendment.").

The Eighth Circuit Court of Appeals has limited procedural due process claims based on "a stigma or other disability that forecloses other employment opportunities . . . to cases in which a public employer terminated an employee and published reasons for the discharge that seriously damaged the employee's standing in the community or foreclosed other employment opportunities." *Neal*, 429 F.3d at 1167-68 (quotations & citations omitted). The court has "further limit[ed] this claim to government accusations so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Id*. at 1168 (quotation & citation omitted).

13

Here, as in *Neal*, Bennie "is not a terminated public employee, nor has []he suffered the arguably analogous injury of license revocation. The [Department] has disclosed only the fact of an investigation, not the allegations being investigated (whether sufficiently stigmatizing or not). Thus, the complaint fails to state a procedural due process liberty interest claim as a matter of law."[2] *Neal*, 429 F.3d at 1168. Accordingly, Bennie has failed to state a procedural due process claim with regard to his claimed liberty interest in his good name and reputation.

### *4. Conclusion Regarding Procedural Due Process Claims*

Because Bennie has failed to state a procedural due process claim based on a property interest in his agent and investment adviser registration, a liberty interest in pursuing his occupation and vocation, or a liberty interest in his good name and reputation, the defendant's motion to dismiss Bennie's due process claims (Claims I and IV) must be granted.

### C. *Bennie's Failure to Request Hearing*

The defendants next argue that Bennie's due process claims (Claims I and IV) should be dismissed because once the Department imposed conditions on his registration, Bennie did not request a hearing under state statute and the Department's regulations. (Filing 30 at CM/ECF p. 20.) Because I have already determined that Bennie's due process claims must be dismissed, I need not address this argument.

---

[2] Recall that the Department's orders in this case simply referred to its "ongoing inquiry into the circumstances surrounding Bennie's termination by LPL." (Filing 26-1 & 26-2.)

### D. *Claims on Behalf of Bob Bennie Wealth Management, Inc. ("BBWM")*

Finally, the defendants move to dismiss all claims asserted on behalf of BBWM as a separate entity because the amended complaint does not allege that the Department took any action against BBWM or that BBWM was deprived of a constitutional right. Further, the defendants contend that Bennie may not assert the constitutional rights of third parties. (Filing 30 at CM/ECF p. 22.)

The only references in the amended complaint to Bob Bennie Wealth Management, Inc., appear in the caption, where Bob Bennie purports to bring suit "on behalf of Bob Bennie Wealth Management, Inc."; in paragraph 21, which states that when Bennie was an agent and investment adviser associated with LPL, "Mr. Bennie operated his business as Bob Bennie Wealth Management, Inc."; and in the signature block at the end of the amended complaint. BBWM is not identified as a party (filing 26 ¶¶ 6-10) and is not referenced in any of the Department's orders that are the focus of this lawsuit (filing 26, exs. A-C). Bennie does not allege that the defendants deprived BBWM of its rights, took any actions against BBWM, or that BBWM as an entity suffered any constitutional injury separate from the harm suffered by Bennie himself. Therefore, to the extent Bennie is asserting separate claims on behalf of the entity Bob Bennie Wealth Management, Inc., such claims must be dismissed. *See Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011) (to state claim under § 1983, plaintiff must allege that conduct deprived plaintiff of constitutionally protected federal right); *Parks v. City of Horseshoe Bend*, 480 F.3d 837, 840 (8th Cir. 2007) (essential element of § 1983 claim is deprivation of constitutionally protected right).

Accordingly,

IT IS ORDERED:

15

1. Defendants' motion to dismiss (filing 29) pursuant to Fed. R. Civ. P. 12(b)(6) is granted in part as follows:

   (a) Plaintiff's procedural due process claims (Claims I and IV of amended complaint (filing 26)) are dismissed for failure to state a claim upon which relief can be granted;

   (b) To the extent Bennie is asserting claims on behalf of Bob Bennie Wealth Management, Inc., as a separate and independent entity, such claims are dismissed for failure to state a claim upon which relief can be grated;

2. Defendants' motion to dismiss (filing 29) is otherwise denied;

3. Claim II (42 U.S.C. § 1983 Equal Protection) and Claim III (42 U.S.C. § 1983 First Amendment) remain pending against all defendants.

DATED this 22nd day of December, 2011.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.